IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-61-D

| | |
|---|---|
| VICTORIA GALBREATH, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> TIME WARNER CABLE, INC., ) </br> ) </br> Defendant. ) | **ORDER** |

On April 1, 2014, Victoria Galbreath ("Galbreath") sued defendant Time Warner Cable, Inc. ("TWC"), alleging that TWC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et. seq. (the "TCPA"), by repeatedly placing automated calls to her cell phone. Compl. [D.E. 1]. On March 27, 2015, TWC moved for summary judgment [D.E. 15], and submitted along with its motion supporting documents [D.E. 16, 17]. On May 4, 2015, Galbreath responded in opposition [D.E. 23] and filed a supporting declaration [D.E. 24]. On June 4, 2015, TWC replied [D.E. 27]. As explained below, TWC's motion for summary judgment is denied.

I.

In December 2013, Galbreath voluntarily provided her cell phone number to TWC as a contact number concerning her TWC account. See Compl. ¶ 12; Galbreath Decl. [D.E. 24] ¶ 2; Zitko Decl. [D.E. 16] ¶ 15; see also [D.E. 16-1] 10–11 (TWC's Residential Services Subscriber Agreement).[1] In February 2014, TWC began calling Galbreath's cell phone in order to collect a past-

---

[1] Although some factual question exists concerning whether Galbreath or her brother completed the contract form, Galbreath admits that she initially consented to the phone calls. Compare Zitko Decl. ¶ 15 with Compl. ¶ 12 and Galbreath Decl. ¶ 2.

due amount on the account. See Compl. ¶ 6; Zitko Decl. ¶ 16; Galbreath Decl. ¶ 3. TWC placed the calls using its "Outbound Enterprise IVR," a system that plays prerecorded messages and is "integrated with TWC's billing system to place calls to customers regarding past due balances." Zitko Decl. ¶¶ 3, 5–7, 16–17; see Compl. ¶ 6; Galbreath Decl. ¶¶ 3–4. Galbreath called TWC back fifteen times, Zitko Decl. ¶ 18; Galbreath Decl. ¶ 6, and, sometime in February 2014, she spoke with a live agent. Compl. ¶ 9; Galbreath Decl. ¶ 5. Galbreath told the agent that "the calls were annoying and she did not want to be called by TWC." Compl. ¶ 9; see Galbreath Decl. ¶ 5. Nonetheless, the prerecorded calls from TWC's IVR system continued until March 20, 2014. Zitko Decl. ¶ 16. Galbreath claims that TWC's prerecorded calls after she withdrew her express consent violated the TCPA and seeks statutory damages for each prerecorded call made after she withdrew her consent. Compl. 3–4; see 47 U.S.C. § 227.

Summary judgment is appropriate when the record, taken as a whole, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). The trial court must then determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court is not limited to the motion itself. Rather, it considers "the record as a whole," viewing the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott, 550 U.S. at 378–80; Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012).

The TCPA makes it unlawful for any person

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

See 47 U.S.C. § 227(b)(1)(A) as amended by Bipartisan Budget Act, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (2015).[2] The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

TWC seeks summary judgment and argues that (1) it made the calls to Galbreath with "prior express consent," (2) the TCPA prohibition does not apply because TWC's system was not an ATDS, and (3) the calls were outside the scope of the TCPA because they were not telemarketing calls. See [D.E. 17] 7–13; see also [D.E. 27] 1–4.

When TWC filed its motion for summary judgment, federal courts disagreed about how to construe the term "consent" in section 227(b)(1)(A). Courts generally agreed that the subscriber to the wireless number was the party capable of giving "consent." See, e.g., Osorio v. State Farm Bank, 746 F.3d 1242, 1251–52 (11th Cir. 2014); Soppet v. Enhanced Recovery Co., 679 F.3d 637, 640–43 (7th Cir.2012); Moore v. DISH Network L.L.C., 57 F. Supp. 3d 639, 648–50 (N.D. W. Va. 2014). Courts also generally agreed that providing a cell phone number to a creditor constituted one means

---

[2] On November 2, 2015, Congress amended the TCPA. See Bipartisan Budget Act, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A) by inserting "'unless such call is made solely to collect a debt owed to or guaranteed by the United States.'"). The amendment does not affect this case.

3

of consenting. See, e.g., Danehy v. Time Warner Cable Enters., No. 5:14-CV-133-FL, 2015 WL 5534094, at *6 (E.D.N.C. Aug. 6, 2015) (unpublished); Chavez v. Advantage Grp., 959 F. Supp. 2d 1279, 1281 (D. Colo. 2013). Courts disagreed vigorously, however, about more nuanced questions of when consent was valid and whether a person could revoke consent. Compare, e.g., Danehy, 2015 WL 5534094, at *6 ("[C]alls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, [and] we clarify that such calls are permissible." (quotation omitted)) with Osorio, 746 F.3d at 1250–54 (holding consent invalid when the called party's cohabitant provided the cell phone number to the caller) and Danehy, 2015 WL 5534094, at *5–7 (noting a split in authority concerning whether good faith belief that consent had been given constitutes a defense to an alleged TCPA violation); compare also Chavez, 959 F. Supp. 2d at 1282–83 (holding that consent could not be revoked) and Saunders v. NCO Fin. Sys., Inc., 910 F. Supp. 2d 464, 468–69 (E.D.N.Y. 2012) (same) with Gager v. Dell Fin. Servs., LLC., 727 F.3d 265, 268–72 (3d Cir. 2013) (holding that consent could be withdrawn, even when a cell phone subscriber had provided consent as part of a contract) and compare Johnston v. USAA Fed. Sav. Bank, No. 12-CV-02486-LTB-KLM, 2014 WL 5439965, at *3 (D. Colo. 2014) (unpublished) (holding that revocation of consent was valid when a consumer had a contractual option to revoke consent but attempted revocation using means different from those provided in the contract) with Frausto v. IC Sys., Inc., No. 10 CV 1363, 2011 WL 3704249, at *2–3 (N.D. Ill. Aug. 22, 2011) (unpublished) (implying through analogy to the Fair Debt Collection Practices Act that consent could be revoked in writing, but finding that it had not been effectively revoked on the facts presented) and Hudson v. Sharp Healthcare, No. 13-CV-1807-MMA (NLS), 2014 WL 2892290, at *7–9 (S.D. Cal. June 25, 2014) (unpublished) (evaluating factual circumstances of consent revocation).

4

On August 10, 2015, the Federal Communications Commission ("FCC" or "Commission") provided its understanding of the meaning of "consent" in section 227(b)(1)(A). See Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) [hereinafter "2015 FCC Order"]. The 2015 FCC Order opened, "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." 2015 FCC Order at 7964 (footnote omitted). "[A]ct[ing] to preserve consumers' rights to stop unwanted robocalls," the FCC responded collectively to numerous inquiries asking it to interpret the TCPA's consent provision. See id. at 7964, 7966–72, 7989–8039. The FCC clarified that only the "subscriber and customary users" of a particular cell phone number, not the intended recipient of a call, can give valid consent. Id. at 8000–01; see Osorio, 746 F.3d at 1251; Soppet, 679 F.3d at 643; Moore, 57 F. Supp. 3d at 648–50. Thus, when a cell phone number is reassigned to a new subscriber, the new cell phone subscriber is not bound by the prior holder's consent.[3] The FCC also concluded that, once given, consent is revocable. 2015 FCC Order at 7989–90; see Gager, 727 F.3d at 268–72. "[A] party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." 2015 FCC Order at 7989–90. "[T]he TCPA requires only that the called party clearly express his or her desire not to receive further calls." Id. at 7997.

In its 2015 FCC Order, the FCC analyzed revocability of consent in response to an inquiry by Santander Consumer USA, Inc. ("Santander"), a bank. See id. at 7993–99. Santander, like TWC here, sought exemptions from TCPA liability for calls to debtors who furnished their phone numbers

---

[3] The FCC announced a narrow exception to the consent requirement: When a phone number has been reassigned, a caller acting in good faith belief that it has valid consent to call the phone number will not incur liability for the first call to the new subscriber. See 2015 FCC Order at 7999–8012.

5

"in connection with their accounts." See Pet. Expedited Declaratory Ruling, 2015 FCC Order, CG Docket No. 02-278, at 2, 6–7 (July 10, 2014). Santander alternatively asked that, if the FCC chose to interpret consent as revocable, it allow callers like Santander to "designate a reasonable method that creates a written record" of revocation. Id. at 9–15; 2015 FCC Order at 7993. The designation of appropriate means of revocation would presumably occur in the consumer credit agreement, i.e. by contract. In response, the FCC concluded that "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing . . . [and] callers may not infringe on that ability by designating an exclusive means to revoke." 2015 FCC Order at 7996; see Gager, 727 F.3d at 268–72.

The FCC interpretation of consent is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984). Chevron deference is a judicial "tool of statutory construction whereby courts are instructed to defer to the reasonable interpretations of expert agencies charged by Congress to fill any gap left, implicitly or explicitly, in the statutes they administer." Am. Online, Inc. v. AT & T Corp., 243 F.3d 812, 817 (4th Cir. 2001) (emphasis and quotation omitted). Congress delegated authority to the FCC to implement the TCPA. See 47 U.S.C. § 227(b)(2). "[W]hen Congress delegates to an agency the authority to implement a statute, Congress implicitly delegates the authority to interpret the statute." Melvin v. Astrue, 602 F. Supp. 2d 694, 703 (E.D.N.C. 2009) (citing Chevron U.S.A., Inc., 467 U.S. at 865–66).

Chevron deference applies when (1) "the statutory language is silent or ambiguous with respect to the question posed" and (2) "the agency's answer is based on a permissible construction of the statute." Am. Online, Inc., 243 F.3d at 817 (quotation omitted). The TCPA's consent requirement contained numerous gaps and ambiguities. For example, it did not specify who could give valid consent, how consent could be given, or whether consent could be revoked. After a public

6

notice and comment period, the FCC interpreted the TCPA consent requirement in its 2015 FCC Order. The FCC concluded that the "called party" capable of giving consent refers to the cell phone subscriber and that consent, once given, may be revoked. See 2015 FCC Order at 7998–8001. The FCC permissibly construed the TCPA's consent provision. Thus, the court defers under Chevron to the FCC's construction of "consent." See Satterfield v. Simon & Schuster, Inc., 953 F.3d 946, 953–54 (9th Cir. 2009) (affording Chevron deference to the FCC's interpretation of another portion of the TCPA); Asher & Simons, P.A. v. j2 Glob. Can., Inc., 977 F. Supp. 2d 544, 550 (D. Md. 2013) (same); Lardner v. Diversified Consultants, Inc., 17 F. Supp. 3d 1215, 1221–22 (S.D. Fla. 2014) (same); cf. Gager, 727 F.3d at 271 n.5 (denying Chevron deference where, unlike in the 2015 FCC interpretation of consent, the FCC had not articulated its rationale).

Galbreath subscribes to the telephone number at issue. See Compl. ¶ 16. Accordingly, she is the party capable of giving and revoking consent. See Galbreath Decl. ¶ 2; 2015 FCC Order at 8000–01. Galbreath contends that TWC "originally had Plaintiff's express consent to call her at her cellular telephone," but that she revoked this consent in February 2014. Compl. ¶¶ 9, 12; see Galbreath Decl. ¶¶ 2–5.

In seeking summary judgment, TWC first argues that Galbreath's consent was irrevocable under North Carolina contract law. See [D.E. 17] 7–8; [D.E. 27] 1–3. In light of the 2015 FCC Order, the court rejects the argument. See 2015 FCC Order at 7997; see also Gager, 727 F.3d at 268–72. Moreover, viewing the evidence in the light most favorable to Galbreath, she revoked her consent in February 2014, but continued to receive prerecorded calls until March 2014.

The court recognizes that reading the FCC Order to defeat TWC's first argument conflicts with the freedom to contract. After all, under the FCC Order, Galbreath remained free to claim her

7

rights under the TCPA and revoke her express consent, even though she originally had contractually agreed to receive any and all communication that TWC sent her. The court reaches this conclusion due to the FCC's unqualified statement in its 2015 Order that "callers may not control consumers' ability to revoke consent." See 2015 FCC Order at 7995. Although companies like TWC remain free to include express-consent provisions in contracts with customers, the FCC's 2015 Order requires companies to accept revocation of consent by "any reasonable method[,] including orally or in writing." See id. at 7996.

As part of its rationale concerning revocation of consent, the FCC stated in its 2015 Order that "the Supreme Court has 'repeatedly held that individuals are not required to welcome unwanted speech into their homes and that the government may protect this freedom.'" See id. at 7995 (citing Frisby v. Schultz, 487 U.S. 474, 485 (1988)). Given both the uniqueness of the home and the ubiquity of cellular telephones, the FCC reasonably interpreted the phrase "prior express consent" in 47 U.S.C. § 227(b)(1)(A) to place the TCPA within a line of precedent protecting consumers from unwanted, incessant domestic intrusion. See FCC v. Pacifica Found., 438 U.S. 726, 748 (1978) ("[I]n the privacy of the home, an individual's right to be left alone plainly outweighs . . . the rights of an intruder."). Furthermore, the FCC's interpretation and the attendant limitation on the freedom to contract comport with analogous limitations on prospective waivers of federal rights. See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) ("[I]t is clear that there can be no prospective waiver of an employee's rights under Title VII."). Moreover, the FCC's interpretation also comports with the common law principle that consent is revocable. See Gager, 727 F.3d at 270–72. Finally, the court observes that companies like TWC remain free, subject to limitations imposed under otherwise applicable debt- collection laws and regulations, to contact debtors by mail

8

or through phone calls that do not use prerecorded voices or ATDSs notwithstanding the FCC's interpretation of the TCPA in its 2015 Order.

Next, TWC seeks summary judgment because TWC's phone system does not constitute an ATDS. See [D.E. 17] 10–12; [D.E. 27] 3–4. The TCPA defines ATDS as "equipment which has the capacity ... (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

When interpreting a statute, a court looks first to the statute's plain text. Sebelius v. Cloer, 133 S. Ct. 1886, 1895 (2013); Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461–62 (2002). A court aims to give effect to each word, and ignoring even a small conjunctive or disjunctive term might rob the statute of its effect. See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). Words joined by the disjunctive "or" ought to "be given separate meanings, unless the context dictates otherwise." Id.; see Pacifica Found., 438 U.S. at 739–40.

The TCPA's text prohibits "using any [ATDS] or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added); see also 2015 FCC Order at 7985–86 (discussing applicability of the TCPA to collect calls dialed by individuals—not ATDSs—that include a brief recorded message); Lardner, 17 F. Supp. 3d at 1223; Nieto v. Allied Interstate, Inc., No. CIV. CCB-13-3495, 2014 WL 4980376, at *3 (D. Md. Oct. 3, 2014) (unpublished), aff'd sub nom. Nieto v. Allied Interstate, LLC, 599 F. App'x 74 (4th Cir. 2015) (per curiam) (unpublished). TWC admits that it used an artificial or prerecorded voice to place the calls to Galbreath. See Zitko Decl. ¶¶ 5–7 (describing the automated messages that TWC's dialing system "plays"). Thus, whether TWC's dialing system constitutes an ATDS is not material to analyzing Galbreath's TCPA claim. See 47 U.S.C. § 227(b)(1)(A).

9

Finally, TWC argues that because the calls to Galbreath's cell phone were debt-collection calls, and not telemarketing calls, they fall outside the TCPA. See [D.E. 17] 12–13. Section 227(b)(1)(A), however, prohibits using an ATDS or prerecorded or artificial voice to call a cell phone and does not mention the subject matter or purpose of the call. See 47 U.S.C. § 227(b)(1)(A). By contrast, section 227(b)(1)(C) imposes separate restrictions on "unsolicited advertisements" to both wired and wireless phones.[4] Telemarketing calls to wireless phones would are subject to restrictions under both subsections, but the prohibition in section 227(b)(1)(A) applies to debt collectors as well as telemarketers. See, e.g., Osorio, 746 F.3d at 1247–48; Gager, 727 F.3d at 274;

---

[4] 47 U.S.C. § 227(b)(1)(C) states:

to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—
(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
(ii) the sender obtained the number of the telephone facsimile machine through—
(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and
(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E).

10

Soppet, 679 F.3d at 637 (allowing for TCPA liability in the debt-collection context); see also 2015 FCC Order at 7989 (exempting under the TCPA only those calls using prerecorded messages to wireless users involving collect calls from inmates). Thus, TWC's debt-collection calls fall within the scope of the TCPA.

II.

In sum, defendant's motion for summary judgment [D.E. 15] is DENIED. The court orders the parties to participate in a court-hosted mediation with Magistrate Judge James E. Gates.

SO ORDERED. This **22** day of December 2015.

JAMES C. DEVER III
Chief United States District Judge